## CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO v. COLUMBIAN NAT. LIFE INS. CO.

## CHICAGO GRAVEL CO. v. SAME.

### Nos. 5301, 5302.

Circuit Court of Appeals, Seventh Circuit.
March 20, 1935.

Rehearing Denied May 14, 1935.

■■■■■■

William Beye, Harry I. Allen, Leonard F. Martin, and Knapp, Beye, Allen & Cushing, all of Chicago, Ill., for appellants.

Donald F. McPherson, James F. Oates, Jr., George Ragland, Jr., and Cutting, Moore & Sidley, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

EVANS, Circuit Judge.

The question presented on these appeals involves the legal effect of an agreement which appears as part of an application for life insurance wherein the parties "agreed as follows: 1. That the insurance hereby applied for shall not take effect until the issuance and delivery of the policy and the payment of the first premium thereon *while the Proposed Insured is in sound health,*" in view of a provision in the policy to the effect that "all statements made by the Insured in the application shall, in the absence of fraud, be deemed representations and not warranties."

*The Facts:* In No. 5302, the Chicago Gravel Company sued appellee on a ten thousand dollar policy covering the life of its vice-president, George B. Hart, who died December 21, 1929. In No. 5301, the Continental Illinois National Bank & Trust Company of Chicago, as trustee under a life insurance trust, sued appellee on two twenty-five thousand dollar policies covering the life of said Hart. All three applications were signed by the insured on May 21, 1929. Appellee executed the policies on May 28 and delivered them on June 7, 1929. As the facts and policies were similar in all material respects, reference will in this opinion be made to the policy as meaning each of three policies. The first premiums were paid on or before the date of delivery of the policies. The insured died from leukemia. Its existence was unknown to either Hart or the doctor who examined him at the time the policy was issued. Statements by the insured in response to questions propounded in the application were made in the honest belief that they were true.

The parties stipulated:

"At the time of the issuance and delivery of said policy and the payment of the first premium thereon, said Hart was in sound health to the best of the knowledge, information and belief of said Hart and of plaintiff. He was not, however, in sound health at said time for the reason that at said time he was and continued thereafter to be afflicted with a serious disease known as leukemia, an obscure disease of the blood. Hart did not have, nor did plaintiff have, any knowledge at or prior to said time mentioned that he was afflicted with said disease, and the defendant had no knowledge that Hart was so afflicted until after his death. Said Hart died on December 21, 1929, from said disease known as leukemia. Hart was not afflicted with said disease known as leukemia when said application for said policy was made on May 21, 1929 and May 23, 1929, but on those dates was in sound health."

The application was printed and consisted of two parts. Part I was a list of many questions which the applicant was required to and did truthfully answer. It was signed on May 21, 1929. Part II consisted of personal statements made by the applicant and recorded by the medical examiner. This was signed on May 23, 1929. It too contained a list of questions and answers made in the honest belief that they were true. At the bottom of the list of questions and answers, and included in Part I, is the following statement:

"It is agreed as follows: 1. That the insurance hereby applied for shall not take effect until the issuance and delivery of the policy and the payment of the first premium thereon while the Proposed Insured is in sound health. * * *"

A jury was waived, the facts were stipulated, and at the conclusion of the trial the court refused to adopt the propositions of law presented by appellants' counsel. It then granted appellee's motion to dismiss the actions.

It is appellants' position that the acknowledgment which appears in the policy to the effect that the statements made by the insured in the application were representations and not warranties applied to the so-called agreement, as well as to the answers to the interrogatories; that liability under the policy could not be avoided if the answers to the interrogatories were made in the good faith belief that they were true; that a similar test should be applied to the statement in the agreement that the insured was in sound health when the first premium was paid and the policy became effective. Appellee, on the other hand, contends that Part I of the application should be divided into (a) the questions and an-

swers, and (b) the agreement which provided that the insurance should not take effect until the issuance and delivery of the policy and the payment of the first premium thereon while the applicant "is in sound health."

Appellee, in fact, goes further and argues that the agreement that the assured "is in sound health" at the time of the payment of the first premium and the issuance of the policy overrides any contrary policy provision to the effect that the answers to the interrogatories appearing in the application are not warranties but merely representations. In other words, it is appellee's contention that notwithstanding the specific acknowledgment of the insurer in its policy that answers to the questions in the applications are not warranties, yet the agreement was outside the scope of the acknowledgment, and there was no valid issuance of the policy, because the applicant was, in fact, not in good health, although he honestly believed he was. We are not prepared so to hold because, among other things, it is unnecessary for us to go so far. There are cases which have been decided which go so far.

The issue in the present case has been greatly narrowed through the stipulation of facts. It appears therefrom that applicant was not in good health at the time the first premium was paid and the policy was delivered, although he was in good health when he made the application. In other words, it appears that Hart was afflicted with leukemia sometime between the date of the application and the issuance of the policy.

There is much of sound merit in the position that courts should construe the application and the policy and the so-called agreement together, giving effect, if possible, to each and every part thereof. So construed the agreement in Part I of the application made good health at the time of the payment of the first premium and the delivery of the policy a condition precedent to the valid issuance of the policy. This agreement, however, was subject to the limitation which the insurer recognized in its policy to the effect that answers contained in the application were not warranties. It was not only natural, but proper, that the parties should specifically agree on the effective date of the insurance and provide against changes in the health of the insured between the date of the application and the issuance of the policy. This was accomplished in this case by the agreement in question. The effect of the answers made to the questions in the application was unchanged. The effect of the insurer's acknowledgment that such answers were not warranties was likewise unaffected. The agreement was therefore limited to what took place between the date of the application and the payment of the first premium and the issuance of the policy. This agreement was in no way modified by the acknowledgment found in the policy itself that the answers to the interrogatories were representations, not warranties. Thus construed the provisions of the application and the policy are both given full force and effect. Inasmuch as the insured was in good health when he applied for the insurance and was not when the first premium was paid and the policy issued, the policy never took effect. The stipulation of facts shows further that the company never waived this breach of agreement for it never learned of Hart's ill health until after he died.

It is unnecessary to review the holdings of the many cases or attempt to reconcile those that are in seeming conflict. In the footnote we have collected many of the leading cases where phases of the question presented to us were carefully considered.[1]

The judgments are affirmed.

[1] Person v. Ætna Life Ins. Co., 32 F. (2d) 459 (C. C. A. 8); Ætna Life Ins. Co. v. Johnson (C. C. A.) 13 F.(2d) 824; McKelvie v. Mutual Ben. Life Ins. Co. (C. C. A.) 287 F. 660; New York Life Ins. Co. v. Wertheimer (D. C.) 272 F. 730; Greenbaum v. Columbian Nat. Life Ins. Co. (C. C. A.) 62 F.(2d) 56; Subar v. N. Y. Life Ins. Co. (C. C. A.) 60 F.(2d) 239; Gill v. Mutual Life Ins. Co. (C. C. A.) 63 F.(2d) 967; Scharlach v. Pacific Mut. Life Ins. Co. (C. C. A.) 16 F.(2d) 245; Ætna Life Ins. Co. v. Roewe (C. C. A.) 38 F.(2d) 393; Couch, Cyclopedia of Insurance Law, § 130; Manhattan L. Ins. Co. v. Carder (C. C. A.) 82 F. 986; Amos-Richia v. N. W. Mutual Ins. Co. (C. C.) 152 F. 192.

Contra:

McLaurin v. Mutual L. Ins. Co., 115 S. C. 59, 104 S. E. 327; Tool v. Nat. L. & A. Ins. Co., 130 Kan. 117, 285 P. 580. See also, Crawford v. Lincoln Life Ins. Co., 278 Ill. App. 576; Middleton v. North American Prot. Ass'n, 260 Ill. App. 288; Fairfield v. Union Life Ins. Co., 196 Ill. App. 7; Hamer v. Globe Mut. Life Ins. Co., 243 Ill. App. 109.