CATHERINE A. COHEN, Plaintiff-Appellee, v. WASHINGTON NATIONAL INSURANCE COMPANY, Defendant-Appellant.

First District (5th Division)   No. 87—1829

Opinion filed September 30, 1988.—Rehearing denied November 2, 1988.

Wildman, Harrold, Allen & Dixon, of Chicago (Roderick A. Palmore and M. Jayne Rizzo, of counsel), for appellant.

Ash, Anos, Freedman & Logan, of Chicago (Bruce T. Logan, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant Washington National Insurance Company from a trial court's grant of summary judgment in favor of plaintiff Catherine A. Cohen. The cause arises out of a health insurance policy issued to Cohen by defendant and involves alleged misrepresentations by Cohen in applying for that policy.

The facts disclose that Cohen made an application to defendant insurer for health insurance on December 27, 1983. On the application form, Cohen marked the "No" box for the following questions.

> "5. Have you *** ever had, or been told you had, or been treated for or are now on medication for any of the following:
>
> * * *
>
> d. Disease of the nervous system, mental or emotional disorder, dizziness, loss of consciousness, convulsions or epilepsy?
>
> 6. Have you *** during the past years, had a physical check up or consulted any physician or practitioner for any reason not previously mentioned, or been to or in a clinic, hospital or sanitarium for observation, operation, or treatment?"

Cohen admits that she reviewed and signed the application. Prior to signing, Cohen had, in fact, had over 130 professional sessions with a psychologist, Dr. Ann Cohn. Cohen saw the psychologist approximately twice a week between July 1981 and April 1983. Dr. Cohn diagnosed Cohen as having a depressive neurosis dysthemic disorder, *i.e.*, DSM III 300.40 as established by the American Psychiatric Association. The record contains no evidence that Cohen was aware of Dr. Cohn's diagnosis.

On November 8, 1984, Cohen was admitted to the Institute of Psychiatry at Northwestern Memorial Hospital and, upon admittance, was diagnosed as suffering from DSM III 300.40 by a hospital therapist. Cohen was discharged from the hospital on February 25, 1985, and eventually filed a claim with the insurer to cover her hospitalization costs and subsequent out-patient treatment. After an investigation, the insurer determined that Cohen was treated by the hospital for the same mental condition for which she had seen Dr. Cohn. Defendant then sent a letter to Cohen on April 2, 1985, declaring the policy void for the material misstatements made on her application, which mis-

statements, if known, would have resulted in the insurer's refusal to issue a policy to Cohen.

Cohen then filed suit for a declaratory judgment. Defendant insurer filed a counterclaim for rescission based on the material misstatements in Cohen's application and both parties then filed cross motions for summary judgment, which were denied by the trial court. After granting a rehearing, the court granted Cohen's motion for summary judgment on the basis that, as a matter of law, the insurer had a duty to pose its questions and inquiries in a more specific fashion. The court concluded that the word "practitioner" as used in the insurer's application was ambiguous and did not include the term "psychologist" in its meaning. This appeal by the defendant insurer followed.

Defendant contends that Cohen's application did contain misrepresentations because the phrasing of questions 5 and 6 required her to reveal her visits to a psychologist and, further, that the court's finding that a psychologist is not a "practitioner" within the context of question 6 is contrary to Illinois law. Defendant also asserts that it proved that the misrepresentation was material by both unopposed expert testimony and by the reasonable person test.

Cohen, on the other hand, argues that defendant's duty to inquire about information material to its risk required it to include the word "psychologist" in its questionnaire. She also contends that the term "practitioner" is undefined, both in legal and medical usage, and thus, must be interpreted in context with the rest of the questions so as to be modified by the adjective "medical," i.e., "medical practitioner," which, of course, would exclude the term "psychologist." Cohen additionally contends that since a psychologist is not authorized to practice medicine, Dr. Cohn could not diagnose Cohen as having a mental or emotional disorder and, therefore, Cohen had no reason to answer questions 5 or 6 affirmatively.

We must reverse the trial court's order for the following reasons.

■ In essence, Cohen argues that the term "practitioner" is ambiguous and should be construed in her favor; defendant insurer claims that the term is unambiguous. In determining whether ambiguity exists in an insurance contract, the relevant clause must be read in its factual context, not in isolation. (*Putzbach v. Allstate Insurance Co.* (1986), 143 Ill. App. 3d 1077, 494 N.E.2d 192.) Furthermore, courts should not strain to find ambiguity where none exists. (*Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 473 N.E.2d 480.) And, if the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the policy provisions should be applied as written. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475

N.E.2d 872.

■■ Applying these well-settled principles to the present case, it is apparent that the term "practitioner" is unambiguous. Keeping in mind that the application was for a health insurance policy, we must examine the use of "practitioner" in context with the entire policy, which also includes the application therefor. (*Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 488 N.E.2d 1338.) Question 5 inquires if the applicant had ever had, or been treated for, a "mental or emotional disorder." Question 6 asks if the applicant had "consulted any physician or practitioner for any reason not previously mentioned." These questions should have reasonably alerted an applicant that the risk carrier was interested in the history of the applicant's mental and emotional health as well as a medical history.

Cohen is correct in that "practitioner" is not a word of art in law or medicine. Thus, the common, everyday meaning of the word should govern a reasonable person's understanding as to its meaning, *i.e.*, "one that exercises an art, science, or profession." (Webster's Third New International Dictionary 1780 (1981).) "Psychologist" is defined as "a specialist in one or more branches of psychology; *esp.*: a practitioner of clinical psychology, counseling, or guidance." (Webster's at 1833.) These terms are not so technical that the ordinary person would need to search for their meanings in a dictionary. It seems clear that questions 5 and 6, posed on an application for health insurance, were specific enough so that Cohen should have mentioned her 130 visits to a psychologist, even if she was unaware of the resulting diagnosis. It then would have been the insurer's duty to investigate further the relationship of those visits to the risk (applicant's health) that it was considering to insure.

■■ ■ A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer; a failure to disclose material information in a response to a question in an application may be a material misrepresentation. (*Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 60 N.E.2d 207.) A material misrepresentation will avoid the contract even though made through mistake or good faith. (Ill. Rev. Stat. 1983, ch. 73, par. 766; *Campbell v. Prudential Insurance Co. of America* (1958), 15 Ill. 2d 308, 155 N.E.2d 9.) Materiality is determined by examining whether the misrepresentation would cause reasonably careful and intelligent persons to regard the fact as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application. *Weinstein*, 389 Ill. 571, 60 N.E.2d 207.

The materiality of a misrepresentation may be established by the underwriter or the insurer's employees. (*Garde v. Country Life Insurance Co.* (1986), 147 Ill. App. 3d 1023, 498 N.E.2d 302.) In the present case, the materiality of Cohen's misrepresentation was attested to in an affidavit by Edward J. Bingley, an underwriter for defendant. Bingley stated that if the insurer had known of Cohen's visits to the psychologist, no health insurance policy would have been issued to her. Bingley's affidavit was not countered by Cohen. Although the materiality of a misrepresentation is ordinarily a question of fact, where it is of such a nature that all would agree it is or is not material, the question is appropriate for summary judgment. (*Garde*, 147 Ill. App. 3d 1023, 498 N.E.2d 302.) Based on the facts of this case, it is reasonable to conclude that Bingley's unopposed affidavit was sufficient to establish the materiality of Cohen's misrepresentation on her application so that summary judgment should have been entered for defendant insurer.

Accordingly, the trial court's entry of summary judgment for Cohen is reversed and the cause is remanded with directions to enter summary judgment in favor of Washington National Insurance Company.

Reversed and remanded with directions.

LORENZ, P.J., and PINCHAM, J., concur.