Willie JACKSON, Plaintiff–Appellant,

v.

The TRAVELERS INSURANCE COMPANY, Defendant–Appellee.

No. 833, Docket 96–7879.

United States Court of Appeals, Second Circuit.

Argued Feb. 18, 1997.

Decided May 14, 1997.

Patrick F. Foley, New York City (McCormick, Dunne & Foley, New York City, of counsel), for Plaintiff–Appellant.

Lawrence C. Fox, New York City (Kornstein, Veisz & Wexler, New York City, of counsel), for Defendant–Appellee.

Before: NEWMAN, Chief Judge, KEARSE and FRIEDMAN *, Circuit Judges.

FRIEDMAN, Circuit Judge:

The district court granted summary judgment dismissing the complaint seeking benefits under a disability insurance policy the appellee The Travelers Insurance Company (Travelers) had issued to the appellant Willie Jackson (Jackson). Travelers had rescinded the policy because of misrepresentations

---

* Daniel M. Friedman of the United States Court of Appeals for the Federal Circuit, sitting by desig-

nation.

made by Jackson, on the application, regarding his medical history. We affirm.

## I.

From 1989 until 1992, Jackson worked for the New York City Transit Authority as a bus driver and was a member of the Transport Workers Union of America (the Union). Travelers offered members a disability insurance policy providing benefits (of the employee's choice) ranging from $300 to $1,000 a month and for one or two year periods. The policy provided for guaranteed benefits of $300 monthly, i.e., an employee could obtain those benefits without regard to his medical history.

In November, 1992, Jackson applied for disability insurance under this plan. The application form, which had the union's name at the top, was a one-page document that required the applicant to fill in blank spaces and check off various boxes. It listed eight different levels of monthly benefits, from $300 to $1,000. Jackson checked the box for $1,000. The application also had benefit periods of one or two years; Jackson checked the latter.

Item 8 asked: "Have you in the past 60 days been absent from work due to illness or injury for 5 days or more?" Jackson checked the "no" box. An instruction following question 8 stated: "If you are applying for the Guaranteed Issue benefit amount and answered 'YES' to Question 8 or if you are applying for more than the Guaranteed Issue benefit amount, Questions 9–11 must be answered." Questions 9 to 11 called for information with respect to approximately 20 medical conditions.

Question 9.c. asked:

To the best of your knowledge and belief do you have or have you received medical treatment for: (circle applicable items)

c. disease or disorder of digestive or respiratory systems; or of back, bones or joints; epilepsy; mental or emotional disease or disorder; or drug or alcohol abuse?

Jackson checked the "no" box.

Question 11.a. inquired:

Have you in the past 5 years:

a. had health examination or medical checkup, illness, or disorder other than indicated above[?]

Jackson checked the "yes" box and, in the immediately following section providing "[d]etails of 'Yes' answers," stated that he had had a "Physical" in September, 1992, at Clinic # 3 at the stated address.

He signed the application below the statement: "I represent that each and all of the foregoing answers are true and complete to the best of my knowledge and belief."

Based on the application Jackson signed, Travelers issued him a $1,000 per month disability policy, effective February 1, 1993. Approximately 4 months later Jackson sustained a work injury, for which he filed a claim of disability benefits under the policy.

Because the incontestability period under the policy had not expired, Travelers initiated an investigation, which disclosed the following:

Jackson had stated in answering Question 9.c. that he had not "received medical treatment for ... disease or disorder ... of back, bones or joints" and had listed in Question 11.a. only a single physical examination when asked to disclose any "health exam or medical checkup, illness, or disorder other than indicated above" during the prior five years. In fact, between May and June, 1992, Jackson had been examined by at least nine physicians and chiropractors for injuries to his neck and back resulting from a car accident on May 25, 1992. These doctors diagnosed Jackson as having numerous back problems, including "intervertebral disc syndrome in the cervical and lumbar regions," "lumbosacral sprain," "cervical and lumbar radiculopathy," and "a gap in the spine." Jackson also had suffered a wrist injury in December, 1991, for which he was examined by various doctors.

Travelers rescinded Jackson's policy, returned the premiums he had paid, and denied him policy benefits.

Jackson then filed suit against Travelers in a New York State court. His complaint alleged that Travelers had offered to union members a "Disability Income Plan," that

Travelers had denied him the benefits to which he was entitled under the "plan" and policy, and that, by failing to make the payments under the policy and plan, Travelers "has violated the rights and protection owing to WILLIE JACKSON under the Employee Retirement Income Security Act of 1974," (ERISA), 29 U.S.C. § 1132(a)(1)(B). Jackson sought the $1,000–a–month payment under the policy.

Travelers removed the case to the United States District Court for the Southern District of New York. It stated that the district court "has original jurisdiction of this action because plaintiff seeks benefits under an employee benefit plan as defined by ERISA, and this action therefore arises under that federal statute."

Both parties moved for summary judgment. The district court, "find[ing] that, as a matter of law, Jackson made material misrepresentations on his application for that disability insurance policy," denied his motion, granted Travelers' motion and dismissed the complaint.

The district court first found it unnecessary to decide whether to apply New York law or federal common law. It stated that "because the federal courts look to state law in fashioning federal common law [under ERISA], there would be no appreciable difference between the application of New York law and federal common law, at least on the facts of this case." (citations omitted).

The court then stated that "Jackson does not deny that he made misrepresentations in answering question 11(a) of the policy application." It ruled that "question 9(c) does not call for the applicant to interpret technical medical jargon but rather is written in clear, everyday language that a layperson should be able to understand and 'furnish truthful, accurate and complete responses' to." (citation omitted). The court held that Jackson's answers to questions 9(c) and 11(a) constituted misrepresentations. The court further held that, as a matter of law, Jackson's misrepresentations were material because "Travelers has presented evidence that, as a matter of policy, it would not have issued the disability policy that it issued to Jackson had he been truthful in his application." Finally,

the court rejected Jackson's contentions that the guaranteed benefits under the policy, i.e., benefits he could obtain without regard to his medical history, included the $1,000 monthly benefits he had selected and that, in any event, he was entitled to the $300 minimum benefits.

## II.

In his appeal Jackson does not challenge the district court's rulings that New York law governs or that his misrepresentations were material. He contends only that (1) the truthfulness of the answers to questions 9(c) and 11(a) was immaterial because the guaranteed benefits under the policy included the $1,000 monthly payment he selected; (2) he answered the relevant questions truthfully; and (3) that, in any event, he was entitled to the $300 minimum benefit because that amount admittedly was a guaranteed benefit. The district court correctly rejected all three of these contentions.

A. Jackson's argument that the different possible amounts of monthly benefits, including the $1,000 he selected, all constituted guaranteed issue benefits under the policy, rests entirely upon a promotional brochure the union distributed to its members that stated: "Cash Benefits Paid Directly to You, Tax Free Each Month $1000.00". Nothing in that statement indicates, or even suggests, that union members were guaranteed $1,000 in monthly benefits without regard to their medical condition. Moreover, other evidence in the record shows that the guaranteed benefits were limited to the lowest monthly payment of $300. A one-page summary of the plan, following a table showing the varying costs for the eight possible monthly payments ranging from $300 to $1,000, stated, under the heading "Guaranteed Issue Program": "Guaranteed issue amount is $300." Although there is no direct evidence that Jackson saw this summary, Jackson signed a statement that the policy "for which I have applied, has been completely explained with regard to guaranteed and simplified issue." Jackson's contention is also refuted by the application itself. If all of the varying amounts of benefits were covered

by the guaranteed issue provision, under which the employee's medical history was irrelevant, there was no reason to include questions 9, 10 and 11 on the application. Those questions called for information with respect to a number of different medical conditions. Indeed, Jackson himself must have been aware that he was seeking benefits in excess of the guaranteed amount when he answered those three questions. He had answered "no" to question 8—had he been absent from work within the past sixty days for five days or more—and the application then stated that if he had answered question 8 "yes" or if he was "applying for more than the Guaranteed Issue benefit amount," questions 9, 10 and 11 must be answered. By answering those three questions after answering question 8 "no," Jackson was acknowledging that he was "applying for more than the Guaranteed Issue benefit amount."

■ B. Jackson's second argument that his answers to 9(c) and 11(a) did not constitute misrepresentations is that his back, neck and wrist injuries for which he received medical treatment were not a "disease or disorder" under question 9(c) or an "illness or disorder" under question 11(a). He contends that those terms are ambiguous, and he invokes the principle that, because insurance contracts are drafted by the company, ambiguities in an insurance policy are construed in favor of the insured and resolved against the insurer. *See Vella v. Equitable Life Assurance Soc'y of the United States*, 887 F.2d 388, 391 (2d Cir.1989); *United States Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232, 492 N.E.2d 1206, 1207, 501 N.Y.S.2d 790, 791 (1986).

We see no ambiguity in those questions. As the district court pointed out in discussing question 9(c), in language equally applicable to question 11(a), the question "does not call for the applicant to interpret technical medical jargon but rather is written in clear, everyday language that a layperson should be able to understand and 'furnish truthful, accurate and complete responses to.'" (citation omitted). The questions clearly and simply required Jackson to state whether he had suffered from or sought medical aid for any of the medical conditions specified in

questions 9, 10 and 11 and, if he had, to explain the circumstances. Question 11(a) was a catch-all provision designed to require disclosure of any medical information not disclosed in the two prior questions. Since Jackson had not "indicated above," i.e., in questions 9 and 10, his prior medical problems regarding his back, bones or joints, question 11(a) required him to disclose those "illness[es] or disorder[s]."

Under New York insurance law, a misrepresentation is any false "statement as to past or present fact, made to the insurer ... at or before the making of the insurance contract as an inducement to the making thereof." N.Y.Ins.Law § 3105(a) (McKinney 1985). The district court correctly held that Jackson's answers to questions 9(c) and 11(a) were misrepresentations regarding his medical history.

■ C. Finally, Jackson contends that even if he is not entitled to $1,000 a month, he is entitled to the $300 monthly guaranteed issue payment. He argues that because he was entitled to that amount without regard to his medical condition, his misrepresentations regarding that condition were irrelevant to his right to the minimum payment.

This court rejected a similar argument in *Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30 (2d Cir.1988) (per curiam). That case involved a life insurance policy that JMR had taken out on the life of its president. The company obtained the lower rate the insurer offered to nonsmokers based on the president's "no" answers to questions in the application regarding whether he smoked or ever had. Following the president's death a year later, the insurer discovered that his representations were false because he had been smoking for ten years. The insurance company brought suit in the district court for a declaration that the policy was void. The district court granted summary judgment for the insurer and ordered rescission of the policy.

This court affirmed. The principal issue was whether, under New York law, the president's misrepresentations were material, and we held that they were. We distinguished the decision of the Appellate Division in *Van-*

*der Veer, II v. Continental Cas. Co.*, 30 A.D.2d 506, 294 N.Y.S.2d 353 (3d Dep't 1968), *aff'd,* 24 N.Y.2d 986, 250 N.E.2d 226, 302 N.Y.S.2d 817 (1969), which JMR cited for the proposition that "the appropriate remedy in this situation is to permit recovery under the policy in the amount that the premium actually paid would have purchased for a smoker." *Mutual Benefit Life Ins. Co.*, 848 F.2d at 32.

*Vander Veer,* upon which Jackson relies, involved a group accident and health insurance policy that Continental Casualty issued to the American Medical Association. The policy provided three levels of benefits for association members: Plan A ($1,000 monthly), Plan B ($750 monthly) and Plan C ($500 monthly). Vander Veer applied for and received a certificate insuring him under Plan A.

In advertising the insurance, the insurer offered association members coverage " 'regardless of your Past Medical History–Guaranteed issuance of Plan C.' " In its solicitation, defendant also made the further representation that " 'During the Charter Enrollment Period, all eligible Members in active full time practice, irrespective of age, may apply. *Coverage will be issued to all applicants during this period, regardless of past medical history.* However, impaired risks may be limited to Plan C.' " *Vander Veer,* 30 A.D.2d at 508, 294 N.Y.S.2d at 355–356 (emphasis supplied by court).

When Vander Veer became disabled, the insurer denied liability on the ground that he had misrepresented his medical condition. The Appellate Division held that Vander Veer was entitled to, at least, the lower Plan C benefits, which he could have obtained without disclosing his medical history. It reasoned:

> While the policy provides different amounts of indemnity designated as "Plans", they were all offered as part of one contract with the American Medical Association to provide insurance to its members. A contract between the defendant and any eligible member came into being upon the filing of an application by the member and, in effect, the member would be insured at least under Plan "C"

regardless of past medical history. While the policy reserved the defendant's *right to limit* a member's indemnity to this latter plan if "evidence of insurability satisfactory and acceptable to the Company" was not furnished, it did not reserve to the company the *right to reject* an application of an eligible member during the initial enrollment and the defendant cannot, therefore, now argue that any alleged misrepresentation regarding a medical history would relieve it of its obligation.

*Vander Veer,* 30 A.D.2d at 508–509, 294 N.Y.S.2d at 356.

In *JMR* this court distinguished *Vander Veer.* It stated that in *Vander Veer* the Appellate Division "emphasized the special circumstances involved in the group policy context that permitted recovery under Plan C despite the misrepresentations made in the Plan A application." 848 F.2d at 33. It then quoted the passage from *Vander Veer* set forth above, and stated that "[t]hose circumstances clearly are not present in the pending case." *Id.* at 34. The court stated:

> If a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy whether or not the parties might have agreed to some other contractual arrangement had the critical fact been disclosed. As observed by Judge Sweet, a contrary result would reward the practice of misrepresenting facts critical to the underwriter's task because the unscrupulous (or merely negligent) applicant "would have everything to gain and nothing to lose" from making material misrepresentations in his application for insurance. Such a claimant could rest assured not only that he may demand full coverage should he survive the contestability period, N.Y.Ins.Law § 3203(a)(3), but that even in the event of a contested claim, he would be entitled to the coverage that he might have contracted for had the necessary information been accurately disclosed at the outset. New York law does not permit this anomalous result.

*Id.*

We think that the present case falls between *JMR* and *Vander Veer.* For the fol-

lowing reasons we conclude that the result in *JMR* rather than that in *Vander Veer* is the proper one here.

In *JMR* the insurer issued to the employer a individually negotiated life insurance policy on the life of the company president. *Vander Veer*, in contrast, involved a group accidental and health policy the insurer issued to a physicians' organization, under which each member could obtain coverage under a certificate of insurance. The arrangement in the present case seems more like that in *Vander Veer* than that in *JMR*. On the other hand, unlike *Vander Veer* where the insureds received only certificates of insurance under a group policy, here Travelers issued an individual policy to Jackson. Moreover, the arrangement between Travelers and the Union may have involved a contractual commitment by the insurer to issue policies to the members rather than the group policy apparently issued to the organization in *Vander Veer*.

In *JMR* this court stressed that denying the lower benefits the insured could have obtained without making the misrepresentations would serve the important public policy of discouraging misrepresentation in insurance applications. When the Appellate Division decided *Vander Veer*, there is no indication that it had the benefit of that analysis. We are not convinced that the New York courts would apply *Vander Veer* to the significantly different facts of the present case. *See Eisenberg v. Continental Cas. Co.*, 48 Wis.2d 637, 180 N.W.2d 726, 734 (1970).

## CONCLUSION

The judgment of the district court granting summary judgment dismissing the complaint is affirmed.