**Beatrice KIOUTAS, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF VIRGINIA, Defendant.**

No. 97 C 6594.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 12, 1998.

Steven H. Mora, Mora & Baugh, Ltd., Chcaigo, IL, for Plaintiff.

William A. Chittenden, III, Janice L. Cleary, Francis Losurdo, Peterson & Ross, Chicao, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LEVIN, United States Magistrate Judge.

### *INTRODUCTION*

Pending before this court is Plaintiff Beatrice Kioutas' (hereinafter "Plaintiff") complaint which was originally filed in the Circuit Court of Cook County, Illinois and subsequently removed to this court.[1] In her complaint, Plaintiff seeks to recover the $200,000

---

1. Life of Virginia removed this action to this court pursuant to 28 U.S.C. § 1332. Jurisdiction is based upon diversity of citizenship and the substantive law of Illinois applies in this case.

death benefit due on an insurance policy issued by The Life Insurance Company of Virginia (hereinafter "Life of Virginia") on the life of her deceased husband, Steven Kioutas (hereinafter "Mr. Kioutas"). Life of Virginia had denied Plaintiff's claim for the death benefit and has filed this motion for summary judgment herein. This court grants Life of Virginia's motion for summary judgment for the reasons set forth below.

### ISSUES

Life of Virginia avers that the insurance policy issued on the life of Mr. Kioutas never took effect because he: (1) failed to satisfy the condition precedent to coverage that he was in good health and insurable at the time the policy was delivered; (2) made material misrepresentations in his application for insurance which materially affected Life of Virginia's acceptance of the risk or hazard assumed in insuring his life; and (3) breached his good faith duty to disclose changes in his health and insurability prior to delivery of the policy.

### BACKGROUND FACTS

The life insurance application in question herein consisted of an Application Part I form, entitled "Application for Life Insurance," and an Application Part II form, entitled "Medical of Application to the Life Insurance Company of Virginia," (hereinafter collectively referred to as the "Application"). (*See* Def.'s Am. Mot. for Summ. J. at 2.) Mr. Kioutas agreed to the following pertinent conditions in executing and signing Part I of the Application on November 30, 1995.

*All answers to the questions in this application, which includes Part 1, 2 and 3 and any medical questionnaires and special questionnaires required, are complete and true to the best of my knowledge and belief, and I agree that:* 1. The answers to those questions, together with this agreement, are the basis for issuing any policy.... 4. Except as otherwise provided in the Conditional Receipt, *no insurance will take effect unless the full first premium is paid and the policy is delivered to me while all persons proposed for insurance are in good health and insurable.* (Em-

phasis added.) (*See* Def.'s Am. Mot. for Summ. J. at 2–3.)

On December 4, 1995 when Mr. Kioutas completed and signed Part II of the Application, he was asked questions concerning his health and medical history. (*See* Def.'s Am. Mot. for Summ. J. at 3.) Mr. Kioutas' Application Part II responses to the relevant medical questions in this case are as follows:

1.   a.   Name and address of your personal physician.

Answer: L.D. Anagnostopoulos, Arlington Heights, IL.

2.   Have you ever been treated for or had any indication of:

c.   Shortness of breath, persistent hoarseness, or cough, bronchitis, pleurisy, asthma, emphysema, tuberculosis, or any lung disorder?

Answer:   Yes—"Bronchitis—7/95   (over counter med)."

j.   Disorder of skin, lymph glands, cyst, tumor or cancer?

Answer: No.

3.   Are you now under observation or treatment for any medical or mental condition?   Explain.

Answer: No.

7.   Other than the above, have you within the past five years:

a.   Had any mental or physical disorder?

Answer: No.

b.   Had a checkup, consultation, illness, injury, surgery?

Answer: No.

d.   Been a patient in a hospital, clinic, or other medical facility?

Answer: No.

e.   Had an electrocardiogram, x-ray, or other diagnostic test?   Answer:   No.

f.   Been advised to have any diagnostic test, hospitalization, or surgery which was not completed?

Answer: No.

(*See* Def.'s Am. Mot. for Summ. J. at 3.)

After completing the medical questions, Mr. Kioutas reviewed and signed Part II of the

Application and made the following certification:

The above statement and answers are complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the Application and are made to induce The Life Insurance Company of Virginia to issue the policy or contract applied for.

(*See* Def.'s Am. Mot. for Summ. J. at 4.)

Jesse Tayloe (hereinafter "Tayloe"), an underwriter for Life of Virginia, reviewed Mr. Kioutas' completed Application and the medical records of Dr. Anagnostopoulos. (*See* Def.'s Am. Mot. for Summ. J. at 4.) Based on Mr. Kioutas' responses and in reliance on the information contained in the Application, Life of Virginia issued its Graded Premium Life Insurance Policy No. 002668205, with Application attached, in the amount of $200,000 designating Mr. Kioutas as the owner and insured of the policy. (*See* Def.'s Am. Mot. for Summ. J. at 4.) The life insurance policy was delivered to Mr. Kioutas on January 19, 1996. (*See* Def.'s Am. Mot. for Summ. J. at 4.)

On June 10, 1996, six months after delivery of the life insurance policy, Mr. Kioutas died of lung cancer. (*See* Def.'s Am. Mot. for Summ. J. at 4.) Plaintiff then filed a claim for the $200,000 death benefit due under the policy. (*See* Def.'s Am. Mot. for Summ. J. at 4.) Because Mr. Kioutas died within the two-year period of contestability, Life of Virginia investigated Mr. Kioutas' medical history. (*See* Def.'s Am. Mot. for Summ. J. at 4.) This investigation revealed that the application information Mr. Kioutas provided to Life of Virginia concerning his health and medical history was false. (*See* Def.'s Am. Mot. for Summ. J. at 4.) Before Mr. Kioutas applied for the subject life insurance, he had been diagnosed with a lung disorder and during the underwriting process, he was conclusively diagnosed with lung cancer. (*See* Def.'s Am. Mot. for Summ. J. at 4.) Specifically, Life of Virginia's investigation revealed the following facts and factual chronology.

1. On his Application, Mr. Kioutas listed Dr. L.D. Anagnostopoulos, his cardiologist, as his personal physician. Dr. Donald Cyborski, not Dr. L.D. Anag-

nostopoulos, was Mr. Kioutas' personal physician. (*See* Def.'s Am. Mot. for Summ. J. at 4.)

2. In November of 1995, Mr. Kioutas contacted Dr. Cyborski complaining of "wheezing for six weeks." (*See* Def.'s Am. Mot. for Summ. J. at 5.)

3. Dr. Cyborski advised Mr. Kioutas to have a chest x-ray. On November 27, 1995, Mr. Kioutas underwent a chest x-ray which revealed a mass on his lung. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

4. On November 28, 1995, Dr. Cyborski informed Mr. Kioutas that the chest x-ray revealed that he had a mass on his lung. Dr. Cyborski advised Mr. Kioutas that he should have a C.T. scan of his lung. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

5. Two days later, on November 30, 1995, Mr. Kioutas applied for life insurance with Life of Virginia. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

6. Mr. Kioutas had a C.T. scan of his lung on December 8, 1995 and a biopsy of his lung on December 12, 1995. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

7. Mr. Kioutas was conclusively diagnosed with lung cancer on or about December 14, 1995. He began a concurrent course of radiation and chemotherapy for his cancer on December 20, 1995. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

8. On January 19, 1996, as stated, the subject life insurance policy was delivered to Mr. Kioutas. (*See* Def.'s Am. Mot. for Summ. J. at 4.)

Because Life of Virginia's position was that it would not have issued or delivered the life insurance policy to Mr. Kioutas if he had truthfully disclosed his health and medical history, Life of Virginia denied Plaintiff's claim for the $200,000 death benefit and refunded all premiums paid to Plaintiff. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

### LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 963 (7th Cir.1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### DISCUSSION

**I. Lowy's Alleged Knowledge of Insured's Cancer Cannot Be Imputed to Life of Virginia.**

Plaintiff contends, in it's Response brief, that Life of Virginia waived its right to rescind Mr. Kioutas' insurance policy. Plaintiff supports this contention by affidavit of his attorney herein. The attorney's affidavit states that the insurance man, Lowy, told him that Mr. Kioutas advised Lowy at the time the policy was delivered that he, Mr. Kioutas, had been diagnosed with and was being treated for lung cancer.[2]

Life of Virginia has moved to strike the affidavit. The court finds it unnecessary, however, to consider this motion. The reason for this is that Lowy's knowledge is attributable to the insurer only if he was acting as the insurer's agent, not as an insurance "broker" and insured's agent in the transaction. And the court finds that, as a matter of law, that Lowy was acting as a broker and insured's agent, not as Life of Virginia's agent in the subject situation.

"Although the question of whether an insurance broker is the agent of the insured or the insurer is generally one of fact, when the evidence clearly shows that the broker is the agent of the insured, it becomes a matter of law." *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264 (7th Cir.1986). *See Davidson v. Comet Casualty Co.*, 89 Ill. App.3d 720, 723, 44 Ill.Dec. 943, 412 N.E.2d 19, 22 (1980). Illinois courts have defined an insurance "broker" as follows:

> [O]ne who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker.

*Lazzara*, 802 F.2d at 264. *See, e.g. City of Chicago v. Barnett*, 404 Ill. 136, 141–42, 88 N.E.2d 477, 481 (1949). "An insurance agent, on the other hand, has a fixed and permanent relationship to an insurance company that the agency represents and had certain duties and allegiances to the company." *Lazzara*, 802 F.2d at 264.

Under Illinois law, the knowledge of an insurance "broker" generally cannot be imputed to the insurance company. *Econo-*

---

**2.** Lowy has filed an affidavit denying Mr. Kioutas    told him this.

*my Fire & Casualty Co. v. Bassett,* 170 Ill.App.3d 765, 771, 121 Ill.Dec. 481, 525 N.E.2d 539, 542 (1988). Conduct determines whether an individual insurance producer is acting as a broker or as an agent for the insurer in a given transaction. *Krause v. Pekin Life Ins. Co.,* 194 Ill.App.3d 798, 805, 141 Ill.Dec. 402, 551 N.E.2d 395 (1st Dist. 1990); *Zannini v. Reliance Ins. Co. of Illinois,* 147 Ill.2d 437, 452–53, 168 Ill.Dec. 820, 590 N.E.2d 457 (1992). Illinois courts have applied a four-part test to determine whether an intermediary is an agent or a broker: (1) who set the intermediary in motion (i.e. who called the intermediary); (2) who controlled the intermediary's actions; (3) who paid the intermediary; and (4) whose interests the intermediary represented. *Krause,* 194 Ill. App.3d at 805, 141 Ill.Dec. 402, 551 N.E.2d at 395.

■ Application of this test inexorably leads to the conclusion that Lowy was an insurance *broker,* whose knowledge, if any, as to Mr. Kioutas' cancerous condition is *not* imputable to Life of Virginia. Lowy's sworn affidavit testimony was that he was an independent insurance broker with no fixed relationship with any insurance company, including Life of Virginia. Lowy's testimony also was that he represented Mr. Kioutas and worked in his interest to obtain the most suitable and affordable life insurance policy here from among a couple insurers; he had long served as Mr. Kioutas insurance broker and had obtained other life and health insurance for him from other companies; and he was "set in motion" by Mr. Kioutas—not Life of Virginia—when Mr. Kioutas came to him to ask for his assistance in obtaining additional life coverage. (*See* Def's. Ex. 9 ¶¶ 1–4).

Moreover, Plaintiff herself repeatedly testified in her deposition that Lowy was her husband Mr. Kioutas' insurance broker (*See*

Def.'s Ex. 4 at 65, 67, 68), and that he helped Mr. Kioutas obtain insurance for his restaurant business. (*See* Def.'s Ex. 4 at 65.) With respect to Mr. Kioutas' purchase of the policy at issue, Plaintiff also testified that she knew Lowy was going to try and get the best available insurance policy from whatever company he could. (*See* Def.'s Ex. 4 at 72.).[3]

In brief, as seen, the only reasonable inference from the record is that Lowy was Mr. Kioutas' broker and agent herein and not the insurer's agent.

## II. The Good Health Condition Precedent to Insurance Coverage Was Not Met

By signing the insurance Application here, Mr. Kioutas agreed that, "[N]o insurance will take effect unless the full first premium is paid and the policy is delivered to me while all persons proposed for insurance are in good health and insurable." (*See* Def.'s Am. Mot. for Summ. J. at 2–3.) It is undisputed, however, that between the time Mr. Kioutas submitted his Application in 1995 and the time the policy was delivered to him on January 19, 1996, he was conclusively diagnosed with lung cancer. (*See* Def's. Am. Mot. for Summ. J. at 5.) In fact, Mr. Kioutas began radiation and chemotherapy treatment for the lung cancer on December 20, 1995, one month before the policy was delivered. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

■ Under Illinois law, an insurer is not liable under an insurance policy when the conditions precedent to coverage are not met. *Continental Illinois Nat'l Bank & Trust Co. v. Columbian Nat'l Life Ins. Co.,* 76 F.2d 733, 735 (7th Cir.1935), *cert. denied,* 296 U.S. 617, 56 S.Ct. 138, 80 L.Ed. 438 (1935), *rehearing denied,* 296 U.S. 662, 56 S.Ct. 168, 80 L.Ed. 472 (1935). *See also Massachusetts Mutual Life Ins. Co. v. O'Brien,* 5 F.3d 1117 (7th Cir.1993); *Sulski v. Metropolitan Life*

---

**3.** Plaintiff claims that certain deposition testimony of Life of Virginia's underwriter creates a material factual issue on the insurance broker/agent issue. However, the court's review of that testimony, in context, discloses that the underwriter was not addressing the insurance broker/agent issue in the testimony referred to. The underwriter was merely referring to the fact that Lowy was the person who took and submitted the policy application in issue, a fact which is undisputed in this case. In this regard: particularly in view of the overwhelming evidence recited, supra, showing Lowy to be insured's broker and agent, it bears noting, too, that on a summary judgment motion, a court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

Ins. Co., 196 Ill.App. 76 (2d Dist.1915), aff'd, 274 Ill. 516, 113 N.E. 862 (1916).

■ The above cited Continental case is squarely on point in favor of the Defendant insurer here. In Continental, the proposed insured was in good health when he applied for life insurance but was diagnosed with leukemia sometime between the date of his application and issuance of the policy. 76 F.2d at 735. The application contained a condition precedent to coverage indicating that the insurance "shall not take effect until the issuance and delivery of the policy and the payment of the first premium thereon while the Proposed Insured is in sound health." Id. at 734. Because, as here, the proposed insured was not in sound health at the time the first premium was paid and the policy delivered, the court held that "the policy never took effect" as a matter of law. Id. at 735.

The Seventh Circuit's decision in Massachusetts Mutual Life Insurance Company v. O'Brien, 5 F.3d 1117 (7th Cir.1993) is also analogous in Life of Virginia's favor here and it expressly sweeps away the cases relied on by the Plaintiff herein. In O'Brien, the proposed insured had been treated for cancer of the lymphatic system for which he received chemotherapy and radiation tens years earlier. O'Brien, 5 F.3d at 1118. O'Brien disclosed in his application the fact that he previously had cancer and was taking medication for a recently developed back strain. Id. at 1120. He also informed the insurer that he was scheduled to have an x-ray of his spine and an IVP to make sure that the back strain was not really a kidney infection. Id. The policy was delivered with a conditional receipt, signed by the insured, that stated:

On the date of this receipt, all answers and statements in any part of the application having an earlier date are complete and true as though given on the date of this receipt. If any of these conditions is not met, the insurance shall not take effect. Then, this receipt will terminate and our only liability will be to return the payment made.

Id. at 1122.

By the time the insurance policy was delivered to O'Brien, the answers he had given in his application were no longer true because he had been diagnosed with a mass in his spine and bone cancer. O'Brien, 5 F.3d at 1119–20. The insurer denied coverage because the representations contained in the application did not continue to be complete and true at the time of the policy's delivery and payment of the first premium. Id.

The Seventh Circuit upheld the insurer's denial of coverage. Initially that Court determined that the insured had a duty to inform the insurer about his subsequent hospitalization and treatment. O'Brien, 5 F.3d at 1121. Specifically, analogous to here, the court found no evidence that the insured's bone cancer was a manifestation of his pre-existing Hodgkin's disease and the evidence was that the bone cancer was unrelated to the cancer of the lymphatic system. Id. at 1122. Moreover, the court emphasized that the latest cases have clarified that "there must be a close relationship between the original disclosed condition and the intervening, undisclosed illness: the first must put the insurer 'on notice' of the second." Id. See Northern Life Ins. Co. v. Ippolito Real Estate Partnership, 234 Ill.App.3d 792, 800, 176 Ill.Dec. 75, 601 N.E.2d 773, 779 (1st Dist.1992)(finding that the applicant's disclosure that he had hemophilia did not put insurer on notice that he also had AIDS). The Seventh Circuit concluded that the insurer appropriately denied liability in light of O'Brien's apparent concealment of material facts about his health.

■ Here, as in O'Brien, there simply is no evidence of a close relationship between the bronchitis Mr. Kioutas had in July of 1995 and his subsequent lung cancer diagnosed in December of 1995 (prior to delivery of the policy in question). Since Life of Virginia had no notice of the fact that Mr. Kioutas might develop lung cancer based on any of the disclosures in his Application, Life of Virginia was clearly within its rights to deny its liability under the policy.

Mr. Kioutas clearly had lung cancer at the time of delivery of the subject life insurance policy. This contravened the policy's express good health condition precedent to policy coverage. Accordingly, the Defendant is en-

titled to summary judgment for failure of the insured to satisfy the good health condition precedent for policy coverage herein.

## III. Insured Materially Misrepresented his Health on his Application.

A separate and independent second ground for summary judgment also exists in this case; i.e., misrepresentations were made by the insured in the insurance application(s) which materially affected the risk assumed by the Defendant insurer.

It is well-established that an applicant has a duty to act in good faith towards an insurer by making a full and complete disclosure of all relevant information when completing an insurance application. . *Stipcich*, 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895; *Carroll v. Preferred Risk Ins. Co.*, 34 Ill.2d 310, 215 N.E.2d 801, 802 (1966); *Garde v. Country Life Ins. Co.*, 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 498 N.E.2d 302, 308 (1986). This means that an applicant has a duty to disclose all relevant information to the insurer so it can "evaluate the risk and determine whether the applicant meets the underwriting standards." *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31, 35 (7th Cir.1971). An insurer is entitled to rely upon the truthfulness of an applicant's answers and has no duty to conduct an independent investigation into their accuracy. *Garde*, 147 Ill.App.3d at 1032, 101 Ill.Dec. 120, 498 N.E.2d at 308; *Garde v. Inter-Ocean Ins. Co.*, 842 F.2d 175, 178 (7th Cir.1988); *Apolskis*, 445 F.2d at 35.

A misrepresentation in an insurance application is an untrue statement or fact that affects the risk undertaken by the insurer. *Weinstein v. Metropolitan Life Ins. Co.*, 389 Ill. 571, 60 N.E.2d 207, 210 (1945); *Garde*, 147 Ill.App.3d at 1031, 101 Ill.Dec. 120, 498 N.E.2d at 308; *Methodist Med. Ctr.*, 38 F.3d at 319. The failure to disclose material information or provide complete information in response to a question can constitute a misrepresentation. *Cohen v. Washington Nat'l Ins. Co.*, 175 Ill.App.3d 517, 124 Ill.Dec. 948, 529 N.E.2d 1065, 1067 (1988); *Garde*, 147 Ill.App.3d at 1031, 101 Ill.Dec. 120, 498 N.E.2d at 308. An applicant's failure to disclose pertinent information will not be excused on the grounds that the applicant be-

lieved the problem was minor. *Apolskis*, 445 F.2d at 35. A material misrepresentation will defeat coverage of the policy even if the applicant acts in good faith or makes a mistake. *Weinstein*, 389 Ill. at 577, 60 N.E.2d at 210; *Cohen*, 175 Ill.App.3d 517 at 124 Ill.Dec. 948, 529 N.E.2d at 1067.

Section 154 of the Illinois Insurance Code provides in part:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warrant shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. 215 ILCS § 5/154.

To prevail on a motion for summary judgment, a movant must show that the only reasonable inferences that can be made from the record are that (1) a misrepresentation was made; and (2) the misrepresentation was made either with an intent to deceive or materially affected the risk accepted or hazard assumed by the insurance company. *Campbell v. Prudential Ins. Co. of Am.*, 15 Ill.2d 308, 155 N.E.2d 9, 11 (1958); *Northern Life Ins. Co.*, 234 Ill.App.3d at 801, 176 Ill. Dec. 75, 601 N.E.2d at 779.

Life of Virginia must demonstrate that the only reasonable inference from the record is that Mr. Kioutas misrepresented the state of his health so that he could obtain insurance coverage from Life of Virginia. (*See* Def.'s Am. Mot. for Summ. J. at 11.) It is undisputed, among other things, that Mr. Kioutas failed to disclose (1) his treatment with Dr. Cyborski for a six week period of wheezing, (2) a recent chest x-ray which showed the presence of a mass in his lung, and (3) the fact that he was scheduled for additional diagnostic testing (i.e., a CT scan) for the lung mass. (*See* Def.'s Reply Br. at 11.)

Very importantly, Mr. Kioutas failed to disclose the fact that just two days before he applied for life insurance, Dr. Cyborski informed him that the results of his chest x-ray indicated he had a lung mass. (*See* Def.'s Am. Mot. for Summ. J. at 5.)

More specifically: a review of the record indicates that Mr. Kioutas answered in his application those questions directly related to his recently disclosed lung disease in such a way as to make false and misleading representations to Life of Virginia. For instance, Mr. Kioutas was asked to identify his personal physician. He answered by disclosing the name of his cardiologist instead of Dr. Cyborski, his internist, who was treating and analyzing the wheezing and lung mass problem. (*See* Def.'s Am. Mot. for Summ. J. at 16.) Mr. Kioutas was asked if he ever had been treated for or had any indication of "any lung disorder" and he failed to disclose that he had just recently suffered from a six week period of wheezing and he had a large mass in his lung. (*See* Def.'s Am. Mot. for Summ. J. at 16.) Mr. Kioutas was askedif he had an indication of a tumor and answered no despite his knowledge of a mass in his lung. (*See* Def.'s Am. Mot. for Summ. J. at 16.) He was asked whether he was under observation or treatment for any medical condition and he failed to disclose his diagnostic tests and treatment for his lung disorder. (*See* Def.'s Am. Mot. for Summ. J. at 16.) Mr. Kioutas was also asked if he had any medical consultations or been advised to have other diagnostic tests in the last five years and he failed to disclose his consultations with Dr. Cyborski, his chest x-ray, his upcoming C.T. scan and biopsy. (*See* Def.'s Am. Mot. for Summ. J. at 16–17.)

When Mr. Kioutas completed Part II of the Application on December 4, 1995, he made the following certification:

> The above statement and answers are complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the Application and are made to induce The Life Insurance Company of Virginia to issue the policy or contract applied for.

(*See* Def.'s Am. Mot. for Summ. J. at 4.) Furthermore, Mr. Kioutas had also agreed to the following in Part I of his Application:

> All answers to the questions in this application, which includes Part 1, 2 and 3 and any medical questionnaires and special questionnaires required, are complete and true to the best of my knowledge and belief.

(*See* Def.'s Am. Mot. for Summ. J. at 2.) In short, Mr. Kioutas clearly ignored the provisions of the Application agreement that he would truthfully disclose his medical history by his misrepresenting the current state of his health.

■ Plaintiff contends that Application questions are ambiguous and that there is dispute as to the meaning of certain terms. (*See* Pl.'s Resp. at 9—10.) A term is ambiguous if it is subject to more than one reasonable interpretation. Whether an insurance policy is ambiguous is a question of law to be determined by the court. *Anetsberger v. Metropolitan Life Ins. Co.,* 14 F.3d 1226, 1231 (7th Cir.1994). "In interpreting insurance contracts, the words in the policy must be given their plain and ordinary meaning; the court should not search for ambiguity where none exists." *DeFoor v. Northbrook Excess & Surplus Ins. Co.,* 128 Ill.App.3d 929, 934, 84 Ill.Dec. 172, 471 N.E.2d 938, 942 (1st Dist.1984). Questions regarding medical history in insurance applications which "[d]o not call for the applicant to interpret technical medical jargon but rather [are] written in clear, everyday language that a layperson should be able to understand and 'furnish truthful, accurate and complete responses to' " have been held to be clear and unambiguous. *Jackson v. Travelers Ins. Co.,* 113 F.3d 367 (2d Cir.1997).

Upon review, the court finds the application questions in issue to be specific, explicit and unambiguous.

To prevail on summary judgment, Life of Virginia must also show that the only reasonable inference from the record is that the misrepresentations were made with an intent to deceive or were material to the risk assumed. Life of Virginia asserts that Mr. Kioutas' misrepresentations were material to the risk assumed, because it relied on the

truthfulness of the representations when issuing the insurance policy. For instance, the insurance policy contains a provision stating, "The answers to those questions, together with this agreement, are the basis for issuing any policy ..." (*See* Def.'s Am. Mot. for Summ. J at 2.) In his affidavit, Patrick Allen (hereinafter "Allen"), a Second Vice President and Manager of the Underwriting Department employed with Life of Virginia for over twenty-eight years, testified that if Mr. Kioutas had truthfully disclosed his medical condition, Life of Virginia would not have issued the insurance policy. (*See* Aff. of Allen at 1, 4.) *See Northern Life Ins. Co.*, 234 Ill.App.3d at 802, 176 Ill.Dec. 75, 601 N.E.2d at 780 (in relying on the insured's representations the insurer's chief underwriter stated that it would have declined coverage if the insured had disclosed it's true medical condition).[4]

The case of *Jones v. Minnesota Mutual Life Insurance Co.*, 1995 WL 746187 (N.D.Ill.) is instructive and directly apposite in the Defendant's favor on this issue. In *Jones,* the applicant misrepresented his medical history by failing to disclose the results of a chest x-ray and two C.T. scans that revealed he had a lung mass. *Id.* at *3. The court found that Jones' misrepresentations were material as a matter of law since "[a] reasonably careful and intelligent person would regard these omitted facts as substantially increasing the chances of the events insured against so as to cause rejection of the application or different conditions." *Id.* at *4.

Plaintiff argues that Life of Virginia could not have reasonably relied on Mr. Kioutas' false representations because Life of Virginia had constructive knowledge of Mr. Kioutas' cancer through it's agent, Lowy. (*See* Pl.'s Resp at 3.) As previously discussed, Plaintiff alleges Mr. Kioutas' revealed his cancer to Lowy at the time the policy was delivered. (*See* Pl.'s Resp. at 3.) Plaintiff argues that because Lowy delivered the policy and Mr. Kioutas accepted the it, Life of Virginia

waived its right rescind the insurance policy. (*See* Pl.'s Resp. at 3.)

Plaintiff's argument is unavailing. As seen, the court has already ruled that Lowy was *not* the insurer's agent here. Even if *arguendo,* however, Lowy is deemed the insurer's agent it would not help for the Plaintiff on this issue.

It is true that under some circumstances, the knowledge of an insurer's agent will be imputed to the insurer. *New England Mutual Life Ins. Co. v. Bank of Illinois,* 994 F.Supp. 970, 978 (N.D.Ill.1998) *citing Logan v. Allstate Life Ins. Co.,* 19 Ill.App.3d 656, 312 N.E.2d 416, 421 (1974). "However, the court will refuse to impute the knowledge of the [insurer's] agent to the insurance company 'where the applicant has acted in bad faith, *either on his own* or in collusion with the insurer's agent.' " (Citations omitted.) *Id.* (See also, *Pistas v. New England Mut. Life Ins. Co.,* 843 F.2d 1038, 1040 (7th Cir. 1988); *Marionjoy Rehab. Hosp. v. Lo,* 180 Ill.App.3d 49, 129 Ill.Dec. 296, 535 N.E.2d 1061 (1989); *Tesluk v. Metropolitan Life Ins. Co.,* 130 Ill.App.2d 290, 264 N.E.2d 566, 569–70 (1970)). Factually, the court in *New England Mutual* held that the insured's misrepresentations in the application about his health mandated summary judgment for the insurer, even if the insurer's agent knew of insured's undisclosed medical condition. 994 F.Supp. at 977–78.

In view of the foregoing, Life of Virginia is entitled to summary judgment, as Mr. Kioutas indisputably made material misrepresentations in his insurance application which materially affected the risk accepted and the hazard assumed by the Defendant insurer.

### CONCLUSION

Accordingly, Life of Virginia's motion for summary judgment is granted and the cause is dismissed with prejudice.[5]

---

4. Plaintiff does not offer any evidence refuting Life of Virginia's claim that Mr. Kioutas false statements constituted material misrepresentations.

5. In light of the Court's ruling, it is unnecessary to address the other summary judgment arguments advanced by Life of Virginia.