METHODIST MEDICAL CENTER OF ILLINOIS, Plaintiff–Appellant,

v.

AMERICAN MEDICAL SECURITY INCORPORATED, Defendant–Appellee.

No. 93–3631.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1994.

Decided Oct. 14, 1994.

7. Because we do not remand for a new trial,   Circuit Rule 36, by its terms, does not apply.

L. Lee Smith, Asst. U.S. Atty., Barbara K. Parker, Thomas A. McConnaughay, Westervelt, Johnson, Nicoll & Keller, Peoria, IL, for plaintiff-appellant.

Joshua G. Vincent, Christine L. Olson (argued), D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, Douglas A. Marshall, D. Kevin Sommer, Hinshaw & Culbertson, Peoria, IL, for defendant-appellee.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Lois McBride, a 60 year old woman suffering from heart disease, assigned her group health insurance benefits to plaintiff-appellant Methodist Medical Center of Illinois ("Methodist"), upon her admission to the hospital as a patient. Lois McBride died in the hospital a few weeks later. Methodist subsequently sued Mrs. McBride's insurer, defendant-appellee American Medical Security, Inc. ("AMS"), seeking reimbursement for Mrs. McBride's medical bills. The United States District Court for the Central District of Illinois granted summary judgment in favor of the insurer, AMS. We affirm.

## I. BACKGROUND

In November 1987, Lois McBride was hospitalized in Santa Cruz, California for gallbladder surgery. During this hospital stay, Dr. Singh, a cardiologist, diagnosed her as having silent myocardial ischemia,[1] recurrent supraventricular tachycardia,[2] and hypertension.[3] Dr. Singh prescribed the drug Verapamil for Mrs. McBride's irregular heartbeat and high blood pressure, which she continued to take for one year.

In August 1989, Jeffries & Sons Trucking of Cambridge, Illinois hired Lois McBride and her husband Larry McBride as truck drivers. Jeffries & Sons Trucking offered the McBrides group health insurance coverage provided by United Wisconsin Life Insurance Co. and administered by AMS. Larry McBride applied for health insurance for himself and for Lois as his spouse. The application forms requested the applicants to disclose certain types of prior or existing medical conditions to the best of their knowledge. The McBrides each prepared and submitted individual application forms required for their group health insurance coverage. Each form contained the following questions:

"3. Have you or any dependent ever had any indication, diagnosis, consultation,

[1.] Myocardial ischemia is a condition resulting from obstruction or constriction of the coronary arteries that causes a deficiency in the blood supply to the heart. The condition is "silent" when it exists without chest pain.

[2.] Supraventricular tachycardia is an irregular heartbeat.

[3.] Hypertension is commonly known as high blood pressure.

treatment or taken medication for: (circle appropriate condition and explain)

a. heart, cancer, diabetes, kidney, stroke or cardiovascular disorder or incurred medical expenses in excess of $2500 during the previous 12 months? . . .

4. Within the past 5 years, have you or any dependent ever had any indication, diagnosis, consultation, treatment or taken any medication or received counseling for: (circle appropriate condition and explain)

a. stomach, gall bladder, intestinal or colon disorder? . . .

d. high blood pressure, arteries or blood vessels?"

On Lois McBride's form, the word "gallbladder" in question 3 was circled. The word "gallbladder" and the date "Nov. 17, 1987" were handwritten in the space provided for further explanations, along with the name of a surgeon in Santa Cruz, California.[4] Her form failed to disclose any diagnosis, treatment received, or medication taken for any heart condition or high blood pressure. Larry McBride's health insurance application form contained no disclosures concerning his wife's health. Both Lois and Larry McBride signed Larry McBride's application, which stated:

"I declare that all the statements contained in this Evidence of Insurability Form are, to the best of my knowledge, true and correct and that no material information has been withheld or omitted concerning the past or present state of health of myself or my named dependents. I understand that the above answers shall be the basis for the Insurer to issue a certificate of insurance."

AMS accepted the McBrides for group health insurance coverage.

On November 16, 1990, Lois McBride suffered from severe chest pains and sought medical assistance at a Stockton, California hospital. Dr. Karabala, a cardiologist at the Stockton hospital, interviewed and examined Mrs. McBride, reviewed her medical history with her, and made notes on her medical history chart. Mrs. McBride related to Dr. Karabala that she had been diagnosed as having silent myocardial ischemia, supraventricular tachycardia, and hypertension.[5] She received treatment at the Stockton hospital until November 30, 1990, when she was discharged in stable condition.

Some two weeks later, in mid-December 1990, Lois McBride was admitted to Methodist as a patient. Upon her admission to Methodist, Lois McBride assigned all of her health insurance proceeds to Methodist. Mrs. McBride's condition deteriorated; and she expired on December 31, 1990. Lois McBride's medical bills from Methodist totalled $59,992.98.

AMS promptly paid Mrs. McBride's medical bills from the Stockton hospital. AMS, after receiving a copy of Lois McBride's death certificate—which listed as the cause of death ischemia cardiomyopathy and coronary artery disease of several years' duration—decided to obtain and review her medical records. Lois McBride's medical records from her 1987 hospitalization for gallbladder surgery related that she was suffering from silent myocardial ischemia, recurrent supraventricular tachycardia, and hypertension. Her medical records from her 1990 hospitalization for severe chest pain revealed that she was aware of her heart condition because she described it to the treating cardiologist (Dr. Karabala).

Following its investigation, AMS concluded that the McBrides had failed to disclose Lois McBride's heart condition on their application, and that this omission was material to

4. During a subsequent telephone call, Lois McBride informed AMS that her gallbladder had been surgically removed on November 17, 1987.

5. According to Dr. Karabala's deposition testimony, Lois McBride did not use these medical terms to describe her medical history. Dr. Karabala testified that Lois McBride explained to him that her heart was not getting enough blood, but

that her condition was silent. Dr. Karabala concluded that she had silent myocardial ischemia. Mrs. McBride also mentioned that she had had an irregular heartbeat for which she had been prescribed the drug Verapamil. Based on the medication prescribed, Dr. Karabala concluded that she suffered from supraventricular tachycardia.

AMS's acceptance of the McBrides for group health insurance coverage. AMS advised Larry McBride that it was rescinding all health insurance coverage for his wife. Thereafter, AMS notified Methodist of its rescission of coverage for Lois McBride.

On April 30, 1992, Methodist instituted this action against AMS, seeking reimbursement for medical bills incurred by Lois McBride. AMS filed a motion for summary judgment, arguing that it was entitled to rescind Mrs. McBride's policy because the application contained material misrepresentations. The district court granted AMS's motion for summary judgment, holding that a material misrepresentation existed which voided coverage under section 5/154 of the Illinois Insurance Code.[6]

## II. DISCUSSION

Methodist urges reversal on two grounds: first, Methodist argues that the district court erroneously found that the McBrides made misrepresentations on their application for group health insurance coverage despite the existence of disputed facts as to whether the misrepresentations were made knowingly; and second, Methodist argues that the evidence presented raises a genuine issue of material fact as to whether any misrepresentation made by the McBrides materially affected AMS's acceptance of the risk.

■ We review a grant of summary judgment *de novo* and "utilize the same standard of decision making as that employed by the district court." *Youker v. Schoenenberger*, 22 F.3d 163, 165 (7th Cir.1994) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989)).[7] Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists when the evidence presented is such that a reasonable jury could find for the non-moving party. *Id.* at 250–51, 106 S.Ct. at 2511.

### A. *Misrepresentation*

■ Under Illinois law,[8] a misrepresentation in an application for insurance is not by itself grounds for denial of coverage. *Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 695 (7th Cir.1991); *Roberts v. National Liberty Group of Companies,* 159 Ill.App.3d 706, 111 Ill.Dec. 403, 405, 512 N.E.2d 792, 794 (1987). However, an insurance company may deny coverage because of a misrepresentation in an application if the misrepresentation "shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154. Before a court may determine if a misrepresentation was made with actual intent to deceive or was material, the court must find that a misrepresentation was made. *See Rivera,* 921 F.2d at 695 ("we need not reach the issue of materiality unless we are willing to reverse the district court finding that there was no initial misrepresentation").

■ A misrepresentation in an application for insurance is "a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Ratcliffe v. International Surplus Lines Ins. Co.,* 194 Ill.App.3d 18, 141 Ill.Dec. 6, 11, 550 N.E.2d 1052, 1057 (1990); *Northern Life Ins.*

---

**6.** The Illinois Insurance Code provides that a misrepresentation or false warranty in an application for insurance may "defeat or avoid the policy [if] it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154.

**7.** Our review of AMS's decision to rescind coverage is also *de novo. Anderson v. Operative Plas-*

terers' & Cement Masons' Int'l Ass'n, 991 F.2d 356, 358 (7th Cir.1993).

**8.** The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* preempts state law in actions involving qualified employee benefit plans. 29 U.S.C. § 1144(a). However, ERISA does not preempt state laws that regulate insurance. *Id.* at § 1144(b)(2)(A).

*Co. v. Ippolito Real Estate Partnership*, 234 Ill.App.3d 792, 176 Ill.Dec. 75, 81, 601 N.E.2d 773, 779 (1992). Incomplete answers or a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved. *Garde v. Country Life Ins. Co.*, 147 Ill.App.3d 1023, 101 Ill.Dec. 120, 126, 498 N.E.2d 302, 308 (1986).

Without question, the McBrides's application form for group health insurance coverage contained a number of misrepresentations. Question 3 of the application form inquired about any prior diagnosis, consultation, treatment, or medication taken for any heart disorder. In responding to this question, the McBrides failed to disclose Lois McBride's 1987 diagnosis of silent myocardial ischemia or her treatment for supraventricular tachycardia with Verapamil. Question 5 asked about any diagnosis, consultation, treatment, or medication taken for high blood pressure. Here too, the McBrides failed to disclose Mrs. McBride's 1987 diagnosis of high blood pressure or treatment for the same with Verapamil. The McBrides's negative responses to these questions falsely represented that Lois McBride had never been diagnosed with or treated for any heart disorder or high blood pressure. The McBrides's failure to disclose Lois McBride's prior diagnoses and treatment were misrepresentations within the meaning of 215 ILCS 5/154.

■ Methodist urges this court to find that the McBrides's insurance application form contained no misrepresentation because, Methodist argues, neither Lois nor Larry McBride "knowingly" misrepresented Lois McBride's health. Contrary to Methodist's argument, however, Illinois law does *not*

require a finding of a "knowing" misrepresentation. A material misrepresentation will avoid coverage, even if it is made through mistake or in good faith. *Cohen v. Washington Nat'l Ins. Co.*, 175 Ill.App.3d 517, 124 Ill.Dec. 948, 950, 529 N.E.2d 1065, 1067 (1988). A material misrepresentation—i.e., one that affects either the acceptance of the risk or the hazard assumed by the insurer—will void an insurance contract regardless of whether the misrepresentation was made innocently or with an intent to deceive. *See Ratcliffe*, 550 N.E.2d at 1057.[9]

### B. *Materiality*

■ Under Illinois law, an insurer may rescind an insurance policy if the insured made misrepresentations that materially affect the insurer's acceptance of the risk. 215 ILCS 5/154. A misrepresentation is material if "reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Small v. Prudential Life Ins. Co.*, 246 Ill.App.3d 893, 186 Ill.Dec. 841, 844, 617 N.E.2d 80, 83 (1993); *Northern Life Ins. Co.*, 601 N.E.2d at 779. Materiality may be established by the testimony of the insurer's underwriter or an employee of the insurance company. *Small*, 617 N.E.2d at 83; *Garde*, 498 N.E.2d at 308. Although the materiality of a misrepresentation is ordinarily a question of fact, summary judgment is appropriate where the misrepresentation is of such a nature that no one would dispute its materiality. *Northern Life Ins. Co.*, 601 N.E.2d at 780; *Commercial Life Ins. Co. v. Lone Star Life Ins. Co.*, 727 F.Supp. 467, 470 (N.D.Ill.1989).

■ We agree with the district court that the omissions on Lois McBride's health insurance application form were material.

---

9. Our holding raises no conflict with this court's decision in *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692 (7th Cir.1991). In *Rivera*, an insurance applicant responded "no" to the insurance application's question "Has any person proposed for coverage ever had or been treated for ... back, spine or skeletal disorder; ...?" One month earlier the applicant's daughter had been hospitalized for an emergency appendectomy. Her physician had mentioned that she had a slight curvature of the spine, but had not suggested any treatment. After the insurer accepted the family for coverage, the daughter began to expe-

rience back pain and was diagnosed with scoliosis. The insurer subsequently denied coverage based on the applicant's failure to disclose his daughter's condition. *Id.* at 695. The trial court entered judgment in favor of the insured, finding that the girl had been neither diagnosed with nor treated for any skeletal disorder at the time her father completed the insurance application form, and that his answers were therefore truthful. *Id.* at 696. The trial court never found, nor did we affirm, that the applicant's responses were truthful because he did not know about his daughter's spinal condition. *See id.*

AMS's underwriting guidelines provided that once an applicant had been diagnosed with a coronary insufficiency, coverage must be declined. A coronary insufficiency is referred to as a decrease in the flow of blood through the coronary blood vessels. AMS's medical consultant and underwriter both testified that AMS would have declined coverage had Lois McBride disclosed her earlier diagnosis for heart disease. Both the medical consultant and underwriting manager concluded that silent myocardial ischemia was a form of coronary insufficiency.[10] Moreover, under Illinois law, "'heart disease is considered a material factor in assessing the risks assumed by an insurance company.'" *Commercial Life Ins. Co.*, 727 F.Supp. at 471 (quoting *Massachusetts Mutual Life Ins. Co. v. Leberis*, 595 F.Supp. 157, 159 (N.D.Ill. 1984)).

We agree that reasonably careful and intelligent persons would regard Lois McBride's history of heart disease as a substantial risk to a company issuing a health insurance policy. Lois McBride's failure to disclose her prior diagnosis for silent myocardial ischemia was material because her condition "substantially increased the chances of the event insured against, so as to cause a rejection of the application." *See Small*, 617 N.E.2d at 83 (omissions regarding an insurance applicant's three hospitalizations for major depressive disorder were material misrepresentations); *Northern Life Ins. Co.*, 601 N.E.2d at 780 (an insurance applicant's failure to disclose his AIDS diagnosis was a material misrepresentation); *Commercial Life Ins. Co.*, 727 F.Supp. at 470-71 (untrue statement that no employee of group coverage insurance applicant had incurred more than $5,000 in medical expenses during the last two years was material).

Methodist argues that summary judgment was improper because the medical experts who provided deposition testimony disagreed as to whether silent myocardial ischemia was

a coronary insufficiency. Dr. Karabala testified that a coronary insufficiency was "an abnormal flow of blood or oxygen to the heart which causes chest pain." He explained that a patient with a coronary insufficiency would usually suffer from chest pain; however, he went on further to explain that a coronary insufficiency can exist with or without chest pain.[11] We are not persuaded that Dr. Karabala's testimony established a genuine issue of material fact. We affirm the district court's finding that Lois McBride's misrepresentation regarding her heart disease was material as a matter of law.

### III. CONCLUSION

There being no genuine issue of material fact in dispute in this case, AMS is entitled to judgment as a matter of law, and the district court's decision to grant summary judgment to AMS is

AFFIRMED.

---

**10.** AMS's underwriting manager also testified that, for purposes of accepting or rejecting an application for health insurance, AMS does not distinguish between symptomatic and asymptomatic conditions. Thus, AMS would classify both myocardial ischemia manifested by chest pain and silent myocardia ischemia as coronary insufficiencies.

**11.** Dr. Karabala agreed that the definition of a coronary insufficiency "can vary from perhaps one author to another" and that whether silent myocardial ischemia was a coronary insufficiency was "a semantic problem."